UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **METROPOLITAN LIFE INSURANCE CO.,** | ) ) ) | Case No. 5:09CV02482 |
| **Plaintiff,** | ) ) | **JUDGE SARA LIOI** |
| vs. | ) ) ) | **MEMORANDUM OPINION** |
| **DEBRA K. DARKOW, et. al.,** | ) ) ) | |
| **Defendants.** | ) | |

This matter is before the Court on a motion of Defendant, Kathryn Dodge (sometimes referred to as "Kathryn" or "Dodge"), for summary judgment. (Doc. No. 19.)[1] By her motion, Dodge seeks a determination that she is entitled to certain benefits under a life insurance policy issued by Interpleader Metropolitan Life Insurance Co. ("MetLife"). For the reasons that follow, Dodge's motion for summary judgment is **GRANTED**.

I. **Factual Background and Procedural History**

On November 7, 1991, Guy Darko (Decedent) married Melissa Dodge. (Doc. No. 1, Compl., Ex. F, "Separation Agreement," ¶ 1.) The parties later entered into a separation agreement on April 20, 1992. (Separation Agreement.) In this agreement, the parties addressed the forthcoming birth of their child. (*Id*. at ¶ 1.) It states, in pertinent part, "The parties agree that issues as to support, insurances, exemptions […] shall be held in abeyance pending the birth of the child and that this agreement will be modified accordingly." (*Id*.)

Thereafter, on December 17, 1992, the Decedent and Melissa Dodge completed

---

[1] Kathryn Dodge previously filed a motion for judgment on the pleadings (Doc. No. 16), which was identical to the present summary judgment motion. Inasmuch as the Court is issuing its decision on summary judgment, Dodge's prior motion for judgment on the pleadings is **DENIED** as moot.

the dissolution of their marriage. (Doc. No. 1, Compl., Ex. F, "Divorce Decree.") In the order of dissolution, the court addressed the various issues regarding the couple's child that had been stayed pending her birth. (*Id*.) The court ordered that, among other things, the child, Kathryn, would reside with her mother, and her father would provide child support and medical insurance. (*Id*. at ¶¶ 1, 3, 5.) Specifically pertinent to the present motion is the following provision:

> Both parties shall name the minor child of the marriage as beneficiary upon his or her respective life insurance policy plans as available through employment; as Father has one child, he shall name her as 100% beneficiary and as Mother has three children she shall name her as 33-1/3% beneficiary.

(*Id*. at ¶ 7.)

Later, the Decedent married Defendant Debra Darkow ("Darkow"), his surviving spouse. (Doc. No. 1, Compl., ¶ 2.) The most recent version of the Decedent's employer-provided life insurance beneficiary form, dated September 18, 2006, provides that Darkow is the primary beneficiary to the life insurance policy, and should collect 100% of the insurance payout. (Doc. No. 1, Compl., Ex. B.)

On December 21, 2008, the Decedent died in Summit County, Ohio. (Doc. No. 1, Compl. ¶ 11; Ex. C, Death Certificate.) Darkow, the surviving spouse, and Melissa Dodge, the ex-wife on behalf of the minor daughter, Kathryn Dodge, filed competing claims to collect the Decedent's life insurance policy on January 31, 2009 and February 5, 2009, respectively.[2] (Doc. No. 1, Compl., Ex. D; Ex. E.) Met Life sent a letter to both parties informing them of the adverse claims and that they would have the option to resolve the issue out of court. (Doc. No. 1, Compl., Ex. G.) When the parties did not reach a settlement, MetLife filed this Complaint in Interpleader on October 22, 2009. (Doc. No. 1, Compl. ¶ 19.) Dodge filed an Answer and Cross-Claim on

---

[2] At the time this Complaint was filed, Kathryn Dodge was a minor and was referenced as "K.D." throughout the pleadings to protect her identity. Since that time, she has reached the age of majority, as claimed in her motion for summary judgment, and filed a supplemental answer, which asserts the use of her full name. (Doc. Nos. 19 and 25, respectively). As such, the Court will use her full name, Kathryn Dodge, throughout this Memorandum Opinion.

December 15, 2009. (Doc. No. 7.) Darkow did not answer, and did not otherwise respond to Dodge's Cross-Claim. This Court, on March 9, 2010, granted MetLife's motion to deposit funds into the registry, and dismissed MetLife from the lawsuit. (Doc. No. 18.)

On June 3, 2010, Dodge filed the present summary judgment motion. (Doc. No. 19.) It is Dodge's assertion that the divorce decree, as cited above, is a qualified domestic relations order ("QDRO") and is thereby not preempted by ERISA, giving her sole beneficiary status regarding the Decedent's life insurance policy. (Mem. in Supp., MSJ.)

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law […].

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein [. . .]. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions

on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

In this case, Darkow has failed to file a timely response to Dodge's motion. The Court is not required to conduct its own probing investigation of the record to discover an issue

4

of material fact when a summary judgment motion is unopposed. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). Nevertheless, the Court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Id.* As such, summary judgment is proper if Dodge meets her burden in moving for summary judgment. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000).

### III.  Law and Analysis

The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144, ordinarily preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, there are limited circumstances where an exception applies. Of particular relevance to the present case is § 1144(b)(7) of ERISA, which "provides that 'subsection (a) of this section shall not apply to qualified domestic relations orders.'" *Metropolitan Life Insurance Co. v. Mulligan*, 210 F. Supp. 2d 894, 897 (E.D. Mich. 2002) (quoting 29 U.S.C. § 1144(b)(7)).

#### A.  Qualified Domestic Relations Order

"The initial question of whether a domestic relations order is a [qualified domestic relations order] QDRO is one for the federal courts." *Puckett v. Puckett*, No. 1:07cv701, 2008 U.S. Dist. LEXIS 27102, at *7 (S.D. Ohio Mar. 19, 2008) (citing *Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan*, 300 F.3d 711, 716 (6th Cir. 2002)). If the divorce decree is a qualified domestic relations order ("QDRO"), in addition to ERISA not being preemptory, the plan may be assigned or alienated. 29 U.S.C. § 1056(d)(3)(A). 29 U.S.C. § 1056(d)(3)(B) and (C) outlines what qualifies as a QDRO and what requirements the instrument must fulfill:

 (B) For purposes of this paragraph—
  (i) the term "qualified domestic relations order" means a domestic relations order—
   (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
   (II) with respect to which the requirements of subparagraphs (C) and (D) are met, and
  (ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—
   (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
   (II) is made pursuant to a State domestic relations law (including a community property law).
 (C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—
  (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
  (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
  (iii) the number of payments or period to which such order applies, and
  (iv) each plan to which such order applies.

Additionally, while 29 U.S.C. § 1056 explicitly discusses pension plans in relation to QDROs, "29 U.S.C. § 1144(b)(7) excepts QDROS [sic] from ERISA preemption with respect to welfare plans as well as pensions plans." *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 421 (6th Cir. 1997). *See also Metropolitan Life Ins. Co. v. Clark*, 159 Fed. Appx. 662, 664-65 (6th Cir. 2005); *Seaman v. Johnson*, 91 Fed. Appx. 465, 468 (6th Cir. 2004); *Mulligan*, 210 F. Supp. 2d 894, 897 (E.D. Mich. 2002). "A life insurance policy issued pursuant to a plan maintained by an employer is a 'welfare plan.'" *Mulligan*, 210 F. Supp. 2d at 897 (E.D. Mich. 2002) (citing 29 U.S.C. § 1002(1)).

Finally, so long as the divorce decree is "specific enough to substantially comply with ERISA's requirements," it will be excepted from ERISA's preemption rule. *Marsh*, 119

F.3d at 422 (6th Cir. 1997). *See also Clark*, 159 Fed. Appx. at 665 (6th Cir. 2005); *Johnson*, 91 Fed. Appx. at 468 (6th Cir. 2004); *Mack v. Mack*, No. 08-11009, 2009 U.S. Dist. LEXIS 28893, at *6 (E.D. Mich. Apr. 1, 2009); *Mulligan*, 210 F. Supp. 2d at 897-98. Upon review of Dodge's motion, and the record evidence offered in support, the Court finds that this divorce decree substantially complies with the requirements of 29 U.S.C. § 1056(d)(3)(C) and, thereby, constitutes a QDRO.

### i.    Name and Mailing Address of Participant and Alternate Payee

In the instant case, the divorce decree provides that "the minor child of the marriage" shall be listed as beneficiary on both parent's respective life insurance policies through employment. (Compl. Ex. F.) In a previous section of the decree, it states "that one (1) child has been born as issue of the marriage. To wit: Kathryn Elizabeth," and includes her date of birth. *Id*. Furthermore, the decree contains the address of the child, since it provides the mother's address and the mother was "designated as the child's residential parent." *Id*. The divorce decree also provides the decedent's name and address.

The facts in *Metropolitan Life Insurance Company v. Marsh* are strikingly similar to the facts at bar, and *Marsh* controls this Court's review. In *Marsh*, the divorce decree stated, in pertinent part:

> IT IS FURTHER ORDERED AND ADJUDGED that all rights of either party in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the other in which he or she was named or designated as beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective shall hereupon become and be payable to the estate of the owner of such policy or such named beneficiary as he or she shall affirmatively designate *except that the minor children of the parties shall be named as beneficiaries to the extent of two thirds (2/3) of the proceeds of Plaintiff's insurance through Metropolitan Life Insurance Company, maintained at his place of employment*.

*Id*. at 417 (emphasis added). Another section provided the names and birthdates of the "minor

children of the parties." *Id*. Additionally, the court found that the divorce decree contained "the addresses of the children since it provides the address of their mother in whose custody they were placed." *Id*. at 422. The court in *Marsh* determined that the divorce decree constituted a QDRO, and found that domestic relations orders need only "substantially comply with ERISA's requirements" to qualify as a QDRO. *Id*. Like the order in *Marsh*, this divorce decree fulfills the first requirement of 29 U.S.C. § 1056(d)(3)(C) by specifying the name and address of the plan participant, the decedent, and the alternate payee, Dodge.

### ii. Percentage of Benefits to be Paid to Alternate Payee

In cases where a fraction of the policy is slated for more than one child or where there is no percentage listed, courts have held that equal division of the benefits between the children is appropriate. *See Johnson*, 91 Fed. Appx. at 471; *Marsh*, 119 F.3d at 422. Here, there is no issue of ambiguity related to the amount of benefits owed the alternate payee. The Court must simply look to the text of the divorce decree. "[A]s Father has one child, he shall name her as 100% beneficiary and as Mother has three children she shall name her as 33-1/3% beneficiary." (Divorce Decree, ¶ 7.) Since the text of the divorce decree clearly states that Dodge is entitled to recover 100% of the proceeds from the deceased's policy, the second requirement of 29 U.S.C. § 1056(d)(3)(C) is fulfilled. *See, e.g., Unicare Life & Health Ins. Co. v. Tackett*, No. 04-40267, 2005 U.S. Dist. LEXIS 30707, at *2 (E.D. Mich. Dec. 2, 2005) (court awarded the child, through his conservator, full benefits upon a order that provided that the parents "shall maintain the minor child […] as the irrevocable beneficiary on their life insurance policies through their employment").

### iii. Number of Payments

While this divorce decree does not outline any specific number of payments, it is

typical for cases involving life insurance beneficiaries to not include that information. For example, in *Marsh*, the district court found that the divorce decree was not qualified partially due to the fact that the number of payments was not listed. *Marsh*, 119 F.3d at 422. The Sixth Circuit reversed, finding that, "[s]ince this was a life insurance policy to be paid in a lump sum on decedent's death and not payments from a pension plan, there was no need to specify the number of payments or periods for which the order applies." *Id*. *See also Mattingly v. Hoge*, 260 Fed. Appx. 776, 779 (6th Cir. 2008); *Metropolitan Life Ins. Co. v. Cronenwett*, 162 F. Supp. 2d 889, 896 (S.D. Ohio 2001). Therefore, as the present case deals with "life insurance policy plans," it is not necessary to consider the number of payments or period of the payments since it will be paid out at one time.

        **iv.**        **Each plan to which the Order Applies**

In *Marsh*, the divorce decree stated that the children would receive "two thirds of the proceeds of Plaintiff's insurance through Metropolitan Life Insurance Company, maintained at his place of employment." 119 F.3d at 417. The Sixth Circuit found that "[w]hile the divorce decree did not specify where deceased was employed, the decree identified the policy as one through Metropolitan Life Insurance Company maintained at his place of employment. This permitted identification of the plan and is not ambiguous." *Id*. at 422. *See Seaman*, 91 Fed. Appx. at 471 (order addressing "life insurance policies […] by virtue of his employment […] with Chevrolet V-8" sufficiently identified each plan to which the order applied). *See also Hoge*, 260 Fed. Appx. at 779; *Cronenwett*, 162 F. Supp. 2d at 896.

Additionally, it is sufficient to identify the plan simply as through the employer. *See Tackett*, No. 04-40267, 2005 U.S. Dist. LEXIS 30707, at *8 (court found that a divorce decree that made the child "the irrevocable beneficiary on [the parent's] life insurance policies

through their employment" fulfilled this requirement) (citing *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994) ("But the stipulation does specify 'the life insurance which is presently carried through his/her employer,' and this designation permits the identification of the plans to which the decree applies without significant ambiguity.")); *Metropolitan Life Ins. Co. v. Fowler*, 922 F. Supp. 8, 14 (E.D. Mich. 1996) (court found that a divorce decree that listed the minor children as "beneficiaries on any and all life insurance policies by virtue of […] employment" was sufficient to determine the plan to which the order applied).

Here, the divorce decree provides that Dodge shall be "beneficiary upon his or her respective life insurance policy plans as available through employment." The Court finds that the language in the divorce decree referencing the life insurance plans to which the order applied is sufficient to fulfill the fourth and final requirement to qualify as a QDRO under 29 U.S.C. § 1056(d)(3)(C). The divorce decree in the present case fulfills all of the requirements as listed in 29 U.S.C. § 1056(d)(3)(C) and qualifies as a QDRO.[3] Therefore, Dodge is entitled to the proceeds of the life insurance policy held by the Decedent.

## VI. Conclusion

Viewing the evidence in a light most favorable to Darkow, the Court finds that Dodge has met her burden of establishing that there are no genuine issues of material fact that warrant a trial in this matter and that Dodge is entitled to summary judgment in her favor as a matter of law. Consequently, the Court hereby **GRANTS** Dodge's motion for summary

---

[3] Moreover, the record reflects that the divorce decree fulfills the requirements listed in 29 U.S.C. § 1056(d)(3)(D), as the order "does not require [the] plan to provide any type or form of benefit, or any option, not otherwise provided under the plan," "does not require the plan to provide increased benefits," and "does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order."

judgment (Doc. No. 19) in its entirety. This case is closed.

    **IT IS SO ORDERED**.

Dated: July 30, 2010

    **HONORABLE SARA LIOI**
    **UNITED STATES DISTRICT JUDGE**